G. W. WILSON ET AL. v. J. C. FISHER AND PETER BULLOCK.

(Filed 28 October, 1908.)

1. **Procedure—Exceptions—Nonsuit.**

    It is the more orderly course of procedure for the plaintiff, whose prayer for special instruction has been refused, to note exception, instead of taking a nonsuit.

2. **Deeds and Conveyances—Mortgagor and Mortgagee—Equity of Redemption, Agreement to Surrender—Void Conditions.**

    Immediately after the *habendum* clause in a paper-writing, called by the parties a deed, it was stated that the writing was to be null and void upon the maker's paying a sum certain, with interest, at a specified time, and on the margin thereof a provision that, if the grantee pay a certain sum at the time specified, the "deed" was to be null and void. No power of sale was contained in the deed. *Held,* (1) the deed is a mortgage upon its face; (2) an agreement made by the mortgagor at the time of the execution of a mortgage to surrender the equity of redemption for a consideration then fixed to be paid at maturity is invalid.

3. **Same—Mortgagee in Possession—Permanent Improvements—Reference.**

    When the mortgagee has been in peaceful possession of the mortgaged premises for a long time, claiming them as his own by reason of payment of a certain fixed sum for the equity of redemption provided for by the terms of the instrument, it is within the equity jurisdiction of the court, in an action to redeem,

to permit him to offset against the rents and profits the increased value of the lands, owing to permanent improvements he has put on them, and a reference is proper to state an account between the parties.

ACTION tried before *Neal, J.,* and a jury, at February Term, 1905, of PENDER.

On and prior to 8 December, 1894, Callie F. Wilson, wife of plaintiff G. W. Wilson and mother of the other plaintiffs, was the owner of the land in controversy. She had joined with her husband in the execution of a mortgage on said land to Gibson James for the purpose of securing the payment of a debt of her said husband, amounting on said date, 8 December, 1894, to the sum of $100. The debt was overdue and Mr. James was pressing Wilson for payment. In this condition of affairs defendant Fisher says: "Wilson had been to me to borrow money. I told Wilson that I would give him twelve months to redeem the land." Mr. J. R. Marshburn, a witness for defendant, thus describes the transaction, which Fisher says is correct: "Wilson was in destitute circumstances and was around everywhere trying to borrow the money to pay James' mortgage. He offered me the land for $150. He asked me to try to sell the land or borrow the money for him. I told Fisher about Wilson's land, and told him I thought it a pretty good chance. I told Wilson that I thought Fisher would buy. Then Fisher and Wilson traded. Fisher advanced $100 to Wilson. I drew the deed. Fisher was to pay $100 down. If Wilson and wife should pay back $100 and 8 per cent. interest, deed stood null and void; and if not, then Fisher was to pay $50 more; then deed was good. Wilson said he had received the $50 and had rented the land from Fisher." The portions of the deed pertinent to the controversy are as follows: The land is conveyed, in the usual form, for a recited consideration of $100. Immediately following the *habendum* are these words: "The condition of this deed of conveyance is such that, if the said parties of the first part

shall well and truly pay or cause to be paid the inserted amount in this deed, together with interest at 6 per cent. per annum at the expiration of twelve months from date of deed, then this (deed) shall be null and void." On the margin of the deed, in the handwriting of the draughtsman, written before the deed was signed, are these words: *"Provided further, that if the party of the second part fail to pay a certain bond or note bearing even date herewith, to the amount of $50, then this deed to be null and void; otherwise to be in full force and effect. And the said parties of the first part shall immediately render up possession of the said hereby granted property to the said party of the second part."* The deed, with the marginal addition, was duly registered. Callie J. Wilson died in May, 1902. Wilson never paid any part of the debt, but upon its maturity took the $50 from Fisher and he took the land. Wilson rented two years and moved away. Wilson says: "If I paid him $100 the land was to be mine. If I did not pay him the $100 he was to pay me the $50 and the land was to be his." There is no substantial controversy in regard to the terms of the contract and the conditions under which it was entered into. The opinion of the witnesses as to the real value of the land at the date of the deed varies from $150 to $400. Fisher says that he made some little improvement on the land—took in just a little land and moved some old buildings; that he sold it to defendant Bullock for $550—this and another piece of land. The rent was worth some $20 or $25. Plaintiffs requested his Honor to hold as a matter of law, upon an inspection of the deed, that it was a mortgage. This was declined. Plaintiffs excepted.

At the close of the evidence plaintiffs asked his Honor to instruct the jury that, upon a consideration of all the evidence, they should find that the paper-writing executed by Wilson and wife to Fisher was a mortgage, and that they should

answer the issue accordingly. This was declined, and plaintiffs excepted, submitted to a judgment of nonsuit and appealed.

*R. G. Grady* and *Kenan & Herring* for plaintiffs.
*Rountree & Carr* and *Stevens, Beasley & Weeks* for defendants.

CONNOR, J. We are of the opinion that, if there had been any controverted allegations of fact, the more orderly course of procedure would have dictated to plaintiffs to note their exception and await the verdict under the instruction of the court, noting exceptions as they may have been advised. By declining the instruction asked his Honor did not intimate that they could not recover, thereby driving them to elect whether they would submit to a nonsuit or have a judgment against them. It may be that his Honor was of the opinion that the legal character of the instruction was dependent upon the intention of the parties, which was a fact to be found by the jury. However, as we differ with his Honor upon the construction of the deed, there was nothing to be submitted to the jury. In our opinion, the deed was upon its face a mortgage, with a provision cutting off the equity of redemption by the payment of $50 by the mortgagee, if the debt of $100 was not paid at maturity. There was an absolute conveyance, with a well-defined, unmistakable clause of defeasance, entitling the grantor to defeat the deed by paying the amount loaned. But for the marginal addition, no question could have arisen respecting the character of the deed or the rights of the parties to it. There being no power of sale, the only method by which the equity of redemption could have been foreclosed was by a civil action in the nature of a bill in equity, followed by a judgment giving the mortgagor a reasonable time within which to redeem, and, upon failure to do so, to direct a sale of the property in accordance with the course and practice of the court. The testimony of Fisher

and Marshburn shows that the real transaction was a loan of money, secured by a conveyance of the land, with a right to redeem by paying the "amount inserted"—$100. Hopkins on Real Property, p. 186; *Wilson v. Weston,* 57 N. C., 350. In *Robinson v. Willoughby,* 65 N. C., 520, *Rodman, J.,* says: "A mortgage is a conveyance by a debtor to his creditor, or to some one in trust for him, as a security for the debt. Whatever is substantially this is held to be a mortgage in a court of equity, and the debtor has a right to redeem." The same learned Judge says: "In the present case the express terms of the writing indicate a mortgage, and the circumstances do not contradict, but sustain this view." This language is peculiarly applicable to this appeal. The plaintiff was in debt; he was trying to borrow money. Fisher says: "Wilson had been to me to borrow money. I told him that I would give him twelve months to redeem the land." All of the testimony sustains the construction of the deed as a mortgage; it was so understood and intended by the parties. *Bunn v. Braswell,* 139 N. C., 135. The marginal addition, with equal clearness, shows that the parties undertook to add to the relation of mortgagor and mortgagee an agreement on the part of Wilson to sell his equity of redemption, in the event he did not pay the debt, for $50. This, for manifest reasons, the courts have uniformly refused to enforce. "If the transaction be a mortgage in substance, the most solemn engagement to the contrary, made at the time, cannot deprive the debtor of his right to redeem; such a case being, on grounds of equity, an exception to the maxim *Modus et conventio vicunt legere.* Nor can a mortgagor, by any agreement at the time of the execution of the mortgage that the right to redeem shall be lost if the money be not paid by a certain day, debar himself of such right." *Robinson v. Willoughby, supra.* This Court, following an unbroken line of decisions in England and this country, has uniformly held that an agreement made at the time of the execution of the mortgage to surrender the equity

of redemption for a fixed amount is invalid. The maxim, "Once a mortgage, always a mortgage," is too deeply rooted in our jurisprudence to be brought into controversy. *Ruffin, J.,* in *Poindexter v. McCannon,* 16 N. C., 377, says that when upon the face of the instrument it is doubtful whether a transaction is a conditional sale or a mortgage, the "court will lean to considering it a mortgage," and will look to the "acts of the parties and the circumstances attending the transaction. When it is once determined to be a mortgage, all the consequences of account, redemption and the like follow, notwithstanding any stipulation to the contrary; for the power of redemption is not lost by any hard conditions, nor shall it be fettered to any point of time not according to the course of the court. This is well expressed by the familiar maxim, 'Once a mortgage, always a mortgage.' " It is well settled, upon sound equitable principles, that contracts made at the time the mortgage is executed, restricting the right to redeem, are void. "When one borrows money upon the security of his property, he is not allowed by any form of words to preclude himself from redeeming." Jones on Mortgages, 251. It is said: "A man shall not have interest on his money, and a collateral advantage besides for the loan of it, or clog the redemption with any by-agreement." *Comyns v. Comyns,* 5 Irish Eq., 583. In *Broad v. Self,* 9 Jur. N. S., 885, it is held "that a mortgagee cannot at the time he advances his money stipulate for his advantage that not strictly belonging to his contract of mortgage." We are of the opinion (1) that the deed is upon its face a mortgage; (2) that, taking the defendant's evidence to be true, the transaction was a loan of money to be secured by mortgage; (3) that the attempt to fix a price upon the equity of redemption and retain to the mortgagee the power to deprive the mortgagor of the right to redeem by paying the amount stipulated was void. His Honor was, therefore, in error in refusing either of plaintiffs' motions. There should be judgment directing a decree per-

mitting plaintiff to redeem upon paying the amount due, including the $50, with interest at 6 per cent., less reasonable rent. While it is the general rule that a mortgagor in possession is not entitled to pay for improvements, we are of the opinion that, as the plaintiffs in this action are asking equitable relief, after so long a time they should account in diminution of rents for such enhancement in value of the property as may be found by reason of permanent improvements put thereon by defendants. There should be a reference to state an account between the parties, upon the principle indicated in this opinion. Let this be certified to the Superior Court of Pender.

Error.